SARAH S. KNOX, WIDOW OF HARRY KNOX, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1948.*

MICHAEL C. ARTERY, Attorney for Claimant.

HON. GEORGE F. BARRETT, Attorney General, and HON. WILLIAM J. COLOHAN, Assistant Attorney General, for Respondent.

ECKERT, C. J.

The decedent, Harry Knox, was employed by the respondent in the Department of Public Works and Buildings, Division of Highways, at the time of his death, and had been so employed since May 22, 1947. On the evening of August 24, 1947, after assisting in clearing U. S. Highway 20 and 12 near Oak Lawn, Illinois, of glass and debris caused by a previous accident, and while loading his tools into the maintenance truck, the decedent was struck by an automobile. He was immediately taken to the Little Company of Mary's Hospital at Evergreen Park, Illinois, where he remained until his death on December 23, 1947.

At the time of the accident resulting in the death of Harry Knox, the employer and employee were operating under the provisions of the Workmen's Compensation

Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The accident arose out of and in the course of decedent's employment. The claimant, Sarah S. Knox, as widow of Harry Knox, seeks an award in the sum of $5200.00 and medical expenses occasioned by the death of her husband.

The respondent has paid hospital and medical charges totalling $1,984.86. There remain unpaid, for medical services furnished to decedent, the following accounts:

Dr. Clifford P. Sullivan......................$   25.00
Dr. Chester R. Zeiss......................... 540.00
Dr. Donald G. Sullivan...................... 2,670.00

Dr. Donald G. Sullivan testified on his own behalf in considerable detail. He stated that he first saw the decedent in the emergency room at the hospital on August 25, 1947; that the patient was in a state of extremis; that he had a compound fracture of the left elbow, a severe cerebral concussion with cortical deterioration, a fractured pelvis, an extensive, comminuted fracture of the left tibia, a separation of the sacroiliac joint, fractures of the 5th right lumbar transverse vertebra and right ankle, multiple contusions and abrasions, and internal injuries, and that he was in a state of severe shock. Dr. Sullivan rendered five continuous hours of emergency treatment and first aid, including infusions of plasma, fluids and stimulants for which he charged $300.00.

Dr. Sullivan subsequently administered, or personally supervised, thirteen blood and plasma transfusions, for which he charged $325.00. He also gave, or supervised, sixty intravenous nutritional and saline infusions, for which he charged $900.00.

Dr. Sullivan further testified that he and Dr. Zeiss operated on the decedent's elbow, an operation which was attended with great risk because of patient's critical condition. For this operation he charged $150.00. On eleven occasions Dr. Sullivan cut away and cleansed pressure sores and decubitus ulcers, for which he charged $165.00. For three insertions of retention catheters he charged $45.00.

Dr. Sullivan also applied a Thomas splint to support decedent's leg with traction blocks, applied a Burdick constrictor to the right leg to increase the arterial supply, and on two occasions applied splints. For these services he charged $150.00.

Dr. Sullivan's charges also include $50.00 for time spent in examining X-rays; $25.00 for preparation of reports requested by respondent, and 140 hospital visits, for which he charged $560.00.

On cross-examination, Dr. Sullivan stated that he made separate charge for the four plasma and blood transfusions and one saline infusion administered during the first aid treatment, which charges were in addition to the $60.00 per hour he charged for that five hour period of service. Many of the intravenous infusions for which he made separate charge were given during the one hundred and forty hospital visits, but he stated that such visits were charged on the basis of physical examinations and minor dressings. The hospital Roentgenologist made X-ray reports, but the doctor said he deemed it advisable to look personally at the film rather than to accept the reports.

There is no question that Dr. Sullivan was required to give extensive and almost constant treatment and attention to a patient in an extremely critical condition. No question can be raised as to his professional ability

or devotion. Nevertheless, Dr. Sullivan's testimony that $2,670.00 is a fair and reasonable overall charge for the services he performed, carefully and impartially considered, and detailed as it is, is not persuasive. He denies there is any duplication of charges for various treatments, but the cross-examination is not entirely convincing. The court is of the opinion that $1,750.00 is a fair and reasonable compensation for the services which Dr. Sullivan performed.

The charge of Dr. Chester R. Zeiss in the amount of $540.00, including $200.00 for surgical reduction of the pubic separation; $150.00 for surgical reduction of the fracture of the left humerus; $100.00 for amputation of the leg, and $90.00 for thirty post-operative hospital visits. The court is of the opinion that these are fair and reasonable charges.

Likewise the charges of Dr. Clifford P. Sullivan in the amount of $25.00 appears entirely reasonable and fair.

At the time of his injury, decedent's wages were 90c per hour. Eight hours constituted a normal working day. Employees in the same classification as claimant worked less than 200 days a year. He had no children under sixteen years of age dependent upon him for support. For compensation purposes, claimant's earnings must be computed on the basis of $1440.00 per year, or $27.70 per week, making a compensation rate of $13.85. Since the injury occurred subsequent to July 1, 1947, this must be increased 30%, making a compensation rate of $18.00 per week.

Under the provisions of the Workmen's Compensation Act, claimant is entitled to an award in the total sum of $5200.00. The decedent, however, prior to his death, received the sum of $311.13 on account of temporary total

disability. This must be deducted from the award to his widow.

A. M. Rothbart, Reporter, was employed to take and transcribe the evidence at the hearing before Commissioner Blumenthal. Charges in the amount of $74.95 were incurred for these services, which charges are fair, reasonable and customary.

An award is therefore made to claimant as follows:

$74.95 is payable forthwith for the use of A. M. Rothbart, Reporter.

$1,750.00 is payable forthwith for the use of Dr. Donald G. Sullivan.

$540.00 is payable forthwith for the use of Dr. Chester R. Zeiss.

$25.00 is payable forthwith for the use of Dr. Clifford P. Sullivan.

$5,200.00 less $311.13, or $4,888.87 is payable to claimant as follows: $828.00, which has accrued, is payable forthwith. The balance of $4,060.87 is payable in weekly installments of $18.00 per week, beginning on the 9th day of November, 1948, for a period of 225 weeks with an additional final payment of $10.87.

All future payments being subject to the terms and conditions of the Workmen's Compensation Act of Illinois, jurisdiction of this cause is specifically reserved for the entry of such further orders as may from time to time be necessary.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."